IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-43-BO

MARK ANTHONY GUTHRIE,            )
                     Plaintiff,  )
                                 )
v.                               )                    O R D E R
                                 )
PHH MORTGAGE CORPORATION f/k/a   )
OCWEN LOAN SERVICING, LLC d/b/a  )
PHH MORTGAGE SERVICES; TRANS     )
UNION, LLC; EQUIFAX, INC., LLC;  )
EQUIFAX INFORMATION SERVICES,    )
LLC; and EXPERIAN INFORMATION    )
SOLUTIONS, INC.,                 )
                     Defendants. )

This cause comes before the Court on cross-motions for summary judgment, defendant's motion for protective order, motions to seal, and motions to strike. The appropriate responses and replies have been filed, or the time for doing so has expired, and the matters are each ripe for ruling.

BACKGROUND

Plaintiff filed this action in Onslow County Superior Court alleging claims arising out of the alleged improper servicing and credit reporting of plaintiff's mortgage loan secured by real property in Jacksonville, North Carolina. Plaintiff's complaint includes claims under, *inter alia*, the federal Fair Credit Reporting Act, Real Estate Settlement Procedures Act, and Fair Debt Collection Practices Act. The complaint was removed on the basis of this Court's federal question jurisdiction. [DE 1]. PHH Mortgage is the only remaining defendant in this action.

The following facts are undisputed unless otherwise indicated. On August 21, 2009, plaintiff and his now-former wife Tonia Guthrie bought a house at 401 Joy Court in Jacksonville,

North Carolina (Property) for $190,126.00. To finance their purchase, the Gurthries executed an adjustable rate note (Note). Repayment of the Note was secured by a lien and encumbrance on the Property through the filing of a Deed of Trust (Deed of Trust) (the Note, Deed of Trust and related documents referred to collectively herein as the Loan). The Loan was subsequently assigned to GMAC Mortgage, LLC. On April 21, 2011, plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina. Plaintiff's wife was not included in plaintiff's bankruptcy case and she did not otherwise file for bankruptcy. Prior to plaintiff's bankruptcy filing plaintiff and Tonia Guthrie had separated; Mrs. Guthrie had relocated to Mississippi and plaintiff remained in the Property with their two minor children.

On June 14, 2011, a divorce decree was filed in Jones County, Mississippi for plaintiff and Tonia Guthrie. During plaintiff's bankruptcy case, GMAC filed a proof of claim for pre-petition arrearages and ongoing obligations under the Loan. Plaintiff's amended motion for confirmation of plan listed a Mississippi address for Tonia Guthrie. On August 16, 2011, the bankruptcy court entered a confirmation order confirming plaintiff's Chapter 13 Plan. The confirmed Chapter 13 Plan provided that plaintiff would resume making the regular contractual monthly installment payments on the Loan and would cure any prepetition arrearage owed to GMAC over the life of the Chapter 13 Plan.

On January 2, 2013, plaintiff filed a motion to allow surrender of real property and modification of Chapter 13 Plan in his bankruptcy case. On or about January 22, 2013, plaintiff and his minor children moved out of the Property and relocated to base housing on MCAS New River. The motion to allow surrender was granted by the bankruptcy court on February 7, 2013. The order allowing surrender of real property and modification of Chapter 13 plan held as follows: plaintiff's real property and home located at 401 Joy Court in Jacksonville was surrendered and plaintiff's Chapter 13 plan was modified to provide for twenty-one monthly

2

payments of $1,825.00 each followed by thirty-nine monthly payments of $825.00 each. [DE 102] Pl. App'x at 28. On February 16, 2013, GMAC transferred servicing of the Loan to Ocwen Loan Servicing (OLS) and on March 15, 2013, GMAC filed a transfer of its claim in the bankruptcy case to OLS. The Loan was assigned to OLS on May 13, 2013. OLS and PHH subsequently merged and the servicing of the Loan was transferred to defendant PHH Mortgage Corporation (PHH or defendant) on February 1, 2019, and on May 14, 2019, the Loan was assigned to PHH.[1]

On March 25, 2014, OLS sent a letter to plaintiff's bankruptcy attorney about the property and Loan. The letter indicated that OLS's records reflected that plaintiff was one of two mortgagers on the account, and so although OLS's records reflected plaintiff's intent to surrender his interest in the property through bankruptcy, OLS would follow normal default procedures. *See* [DE 85 p. 171] Feezer Decl. Ex. I. The letter included a disclaimer regarding bankruptcy which stated, among other things, that the letter was not an attempt to collect either a pre-petition, post-petition, or discharged debt; that if the bankruptcy case was still active no action would be taken in willful violation of the automatic bankruptcy stay; and if the borrower had received an order of discharge in bankruptcy any action taken by OLS was for the sole purpose of protecting its lien interest in the underlying mortgaged property. *Id.*

The nature and extent of OLS's communications going forward are the subject of dispute. Plaintiff does not dispute that he alleged to have kept contemporaneous notes of the conversations he had with OLS/PHH Mortgage agents but he lost or destroyed those notes. Defendant contends that it continued to contact the co-borrowers on the Loan, plaintiff and Tonia Guthrie, at the single address it had on record, but plaintiff disputes this, indicating that

---

[1] Because the transfer of the Loan and its servicing between OLS and PHH does not impact the Court's analysis, the Court at times identifies these parties as OLS, PHH, or defendant.

defendant also sent letters to other addresses. The parties also dispute the number and nature of phone calls that plaintiff received about the Loan. For example, plaintiff contends, and defendant disputes, that beginning in November 2013 he received one to three calls from defendant per week and that these calls persisted until January 2016. Defendant contends that when it did call it attempted to speak with either plaintiff or his former wife, and if the borrower actually reached was involved in bankruptcy or had received a discharge, defendant would, pursuant to its policies and procedures, inform that person that the call was for informational purposes and was not an attempt to collect the loan. Plaintiff also called defendant attempting to have collection activities and negative credit reporting stopped. Plaintiff threatened to sue defendant if he received more letters.

On May 18, 2016, after plaintiff had successfully completed all of the payments required under his Chapter 13 Plan as modified by the surrender order, a discharge order pursuant to 11 U.S.C. § 1328(a) was entered in plaintiff's bankruptcy case and the bankruptcy case was closed on August 22, 2016. No attempt was made through OLS to remove Tonia Guthrie from the Loan and plaintiff's name remained on the title to the property while the Loan was serviced by OLS. Defendant continued to send to communications about the Loan to plaintiff and Tonia Guthrie at the address on file, and plaintiff contends letters were sent to other addresses as well.

Plaintiff contends that following the discharge and between June 2016 and January 2019 defendant continued to seek payment on the Loan from plaintiff through periodic monthly mortgage statements, phone calls, and demand letters. Defendant disputes that it was seeking payment from plaintiff for any amounts discharged in bankruptcy, again stating that it engaged in normal collection effects with respect to Tonia Guthrie and that all written correspondence included conspicuous disclaimers that if the Loan was in active bankruptcy or had been discharged the correspondence was for informational purposes only.

4

In June and July 2017, plaintiff received mortgage account statements from defendant. Both statements included an "Important notice" which reflected that the communication was from a debt collector and that if the debt was in active bankruptcy or had been discharged through bankruptcy the communication was provided for informational purposes only with regard to defendant's secured lien on the referenced property. See [DE 102] Pl. App. at 40, 44.

On July 17, 2017, plaintiff called OLS and informed them he had been denied credit because of OLS's failure to update its records and that he would sue defendant if it did not update its records. The parties disagree as to whether additional telephone conversations took place between plaintiff and defendant after June 2017. On September 14, 2018, Onslow County, where the property is located, was deemed a part of a natural disaster area as a result of Hurricane Florence.

Beginning in 2019, defendant was notified of a credit dispute submitted by plaintiff to consumer reporting agencies Trans Union and Experian. Plaintiff sought and obtained loans and credit between 2017 and 2020 and was denied credit three times during this period. In 2019, plaintiff was denied a mortgage loan by Navy Federal Credit Union and car loans by PNC Bank and Sun Trust Bank. He obtained an auto loan in April 2019 from Ally Financial and a mortgage loan as well as a personal loan from U.S. Bank in 2020. Plaintiff also obtained a car loan from Navy Federal Credit Union in July 2020.

Plaintiff is a commissioned officer in the United States Marine Corps and a trained tiltrotor pilot. As part of his duties, plaintiff secured and maintained top-secret security clearance. In November 2019, the Department of Defense Central Adjudication Facility sent a request for information to plaintiff seeking information about the Loan which was referenced as delinquent in a Trans Union credit report dated May 30, 2019. [DE 84-8]. Plaintiff disputes the date that he received the request for information, but on January 17, 2020, plaintiff received a "no

5

determination made" adjudication for his security clearance eligibility, which had the effect of pausing plaintiff's security clearance. The request for information sought a response within thirty days, and a response from plaintiff was not sent until January 23, 2020, or sixty-six days after the request for information was sent. The pause on plaintiff's security clearance was lifted on February 5, 2020. Plaintiff was not demoted and was not docked pay as a result of the request for information or the nineteen-day pause in his security clearance; plaintiff also agrees that his security clearance would not have been paused had he responded to the request for information within the time provided. Plaintiff was subsequently promoted from the rank of Major to Lieutenant Colonel.

Plaintiff was diagnosed with gastroesophageal reflux disease (GERD) in 2006. While deployed to Kuwait from October 2016 to April 2017, plaintiff resumed taking medicine to treat the issue and the medicine relieved his symptoms. There is no evidence in the record which reflects that a medical professional has opined that plaintiff's GERD is a result of or was exacerbated by the alleged acts or omissions of defendant. Plaintiff did not object to defendant's statement that he has also never been diagnosed with a physical or mental condition which was experienced by plaintiff as a result of the alleged acts or omissions of defendant, including anxiety. However, in his own affidavit, plaintiff indicates that he is seeing a psychologist who has diagnosed him with generalized anxiety disorder and that as a result plaintiff is currently ineligible to fly. [DE 102] Pl. App'x at 18; Guthrie Aff. ¶ 110. Plaintiff also states that his anxiety has caused him to have high blood pressure, a general feeling of being on edge and jumpy, to be overly worrisome, and to wake up gasping for air. *Id.* ¶ 109.

On or about December 16, 2019, plaintiff, through counsel, sent a letter to defendant entitled *Qualified Written Request, Notice of Error, Notice of Disputed Information and Requests for Information pursuant to the Real Estate Settlement Procedures Act and Chapter 45 of the*

6

*North Carolina General Statutes.* Defendant received the letter on December 23, 2019. Defendant responded to the letter on December 24, 2019, in which it acknowledged receipt of the letter and stated it would respond within thirty business days. On December 30, 2019, defendant sent plaintiff a pay-off statement. Counsel for plaintiff then sent a second letter to defendant, *Second Notification that Borrower is Represented by Counsel; Instruction to Cease Communicating Directly with Borrower in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.* On January 16, 2020, plaintiff received another monthly mortgage statement.

DISCUSSION

I.     <u>Motions to seal.</u>

At the outset, the Court DIRECTS the Clerk of Court to UNSEAL the following docket entries: DE 97, 98, 99, 100, 101, 102-106. Plaintiff filed these documents as proposed sealed documents, advising defendant to file a motion to seal if it desires the documents to remain under seal. [DE 107]. Defendant has not filed such a motion as to these documents, and the Court thus finds no basis on which to maintain their sealed status. Accordingly, the Clerk shall unseal the documents cited this order so that they are available on the public docket.

Defendant has filed motions to seal the following specific documents or exhibits as they contain confidential financial information contained in plaintiff's credit report and confidential business and proprietary documents: DE 85 & DE 86 & DE 69. In the absence of opposition, and as defendant has sufficiently demonstrated in its briefing that the privacy interests in the documents cited outweigh the right of public access, and defendant has further sought to seal only specific documents rather than entire memoranda, the motions [DE 76 & 87] are GRANTED. *See In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

7

As provided in the motion at [DE 76], only portions of Exhibit 14 to plaintiff's response to defendant's motion for summary judgment have been requested to be sealed, despite plaintiff having filed his memorandum and all exhibits to his memorandum at DE 76 under seal. The Clerk shall unseal DE 69 with the exception of DE 69-14, which shall remain under seal and for which defendant has filed a redacted version at DE 76-2.

## II. Motion for protective order.

The motion for protective order is DENIED AS MOOT in light of the Court's ruling on summary judgment.

## III. Motions to strike.

Plaintiff's motion to strike portions of defendant's errata sheet is granted.

Rule 30(e) of the Federal Rules of Civil Procedure provides that a deponent is permitted to sign a statement listing any changes to the form or substance of his deposition and the reasons for making the changes. Fed. R. Civ. P. 30(e)(1). "A change in 'form' would include correcting a typographical error or a spelling error. A change in 'substance' would include the substantive correction of a court reporter's transcription (i.e., the witness answers 'No,' but the court reporter records 'Yes'). *William L. Thorp Revocable Tr. v. Ameritas Inv. Corp.*, 57 F. Supp. 3d 508, 518 (E.D.N.C. 2014). The Rule "does not permit a party to make changes that substantively contradict or modify [a] sworn deposition." *Id.* at 518.

The changes identified by plaintiff are more than typographical or substantive. The Court will therefore GRANT his motion to strike. [DE 79].

Defendant has also filed a motion to strike, seeking to strike portions of plaintiff's opposing statement of material facts that do not comply with Local Civil Rule 56.1(a)(2). The Court has considered the motion in light of the relevant standard, *see, e.g., Morrisroe v. Goldsboro Mill. Co.*, 884 F. Supp. 192, 194 (E.D.N.C. 1994), and declines to strike the material

8

cited by defendant. The Court discerns no prejudice in plaintiff's inclusion of an opposing statement of material fact in his response to defendant's statement of material facts, in particular because plaintiff has filed his own motion for summary judgment which he has supported by citing to the same relevant facts. Defendant's motion [DE 117] is therefore DENIED.

IV.    Motions for summary judgment.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must

9

ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

A.    Defendant's motion for summary judgment.

Defendant seeks summary judgment in its favor on each of plaintiff's claims.

*Claims arising under North Carolina law*

Summary judgment in defendant's favor is appropriate on plaintiff's claims brought under North Carolina law as they are either precluded by state law, preempted by federal law, or plaintiff has otherwise failed to create a genuine issue of material fact sufficient to survive summary judgment.[2]

(1) North Carolina Unfair and Deceptive Trade Practices Act.

The North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-56, expressly provides that the "specific and general provisions of this Article *shall exclusively* constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article." In other words, where a plaintiff alleges violations of the Unfair and Deceptive Trade Practices Act (UDTPA) based upon debt collection activity, such claims are precluded because the N.C. Debt Collection Act "supplants the UDTPA in the debt collection context." *Self v. Nationstar Mortg. LLC*, No. 2:19-CV-3-D, 2019 U.S. Dist. LEXIS 165305, at \*15 (E.D.N.C.

---

[2] Plaintiff's opposition brief incorporates by reference its argument made in opposition to defendant's motion for judgment on the pleadings in which he contends that defendant has waived the issue of preemption by the Bankruptcy Code for failing to plead it as an affirmative defense in its answer. *See* [DE 68]. However, it is "well established that an affirmative defense is not waived absent unfair surprise or prejudice." *Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc.*, 380 F.3d 200, 209 (4th Cir. 2004). Thus, to the extent preemption by the Bankruptcy Code does not concern the Court's subject matter jurisdiction, an issue which may be raised at any time, the Court discerns no, and plaintiff fails to demonstrate any, unfair surprise or prejudice in defendant raising the issue of preemption for the first time in its motion for judgment on the pleadings or in a subsequently filed motion for summary judgment.

Sep. 26, 2019) (internal quotation and citation omitted). Plaintiff's allegations that support his UDTPA claim arise solely from defendant's alleged attempts to collect from plaintiff on the Loan. Indeed, plaintiff agrees that the N.C. Debt Collection Act is the exclusive act to recover for unfair and deceptive trade practices regarding debt collection. Defendant is entitled to summary judgment on this claim.

(2) North Carolina Debt Collection Act.

Defendant is also entitled to summary judgment on plaintiff's N.C. Debt Collection Act claim as, to the extent it is premised on attempts to collect a debt discharged through bankruptcy, it is preempted by the Bankruptcy Code. Plaintiff alleges as the basis of each claim that he was discharged from any legal obligation to make further payments on the Loan pursuant to the Chapter 13 bankruptcy discharge. The Bankruptcy Code, specifically 11 U.S.C. §§ 362 and 364, governs the collection of debts during and after bankruptcy.

> The bankruptcy system affords debtors protection from creditors' collection efforts through two related, but sequentially separated provisions. The automatic stay under § 362(a) shields debtors for the duration of a bankruptcy case until entry of discharge or dismissal. Once a discharge is entered, the automatic stay terminates and a discharge injunction takes effect to prevent creditors' efforts to collect on debts that were discharged. A discharge in bankruptcy, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ..." While a violation of the discharge injunction does not provide an express remedy akin to § 362(k) for violations of the automatic stay, § 105 allows a bankruptcy court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction.

*In re Williams*, 612 B.R. 682, 690 (Bankr. M.D.N.C. 2020) (internal citations omitted). Several courts that have considered the issue have concluded that the Bankruptcy Code preempts state law claims which require proof of violation of the discharge injunction. *See Gaitor v. U.S. Bank. N.A. (In re Gaitor)*, Nos. 13-80530, 14-09059, 2015 Bankr. LEXIS 2545, at *8 (Bankr. M.D.N.C. July 31, 2015); *see also Johnston v. Telecheck Servs. (In re Johnston)*, 362 B.R. 730,

11

737 (Bankr. N.D.W. Va. 2007) ("state law causes of action that would allow a debtor to collect damages for a violation of the discharge injunction are foreclosed by the remedies provided by § 524 of the Bankruptcy Code"); *but see Barnhill v. FirstPoint, Inc.*, No. 1:15-CV-892, 2017 WL 2178439, at \*5 (M.D.N.C. May 17, 2017); *In re Waggett*, No. 09-4152-8-SWH, 2015 WL 1384087, at \*8 (Bankr. E.D.N.C. Mar. 23, 2015). The Court further finds *Waggett*, on which plaintiff relies, distinguishable. In *Waggett*, the court found that plaintiff's North Carolina state law claims were not preempted because they were "premised on other grounds than just a violation of the discharge injunction" and the complaint did "not even mention the words 'discharge' or 'discharge injunction.'" *In re Waggett*, 2015 WL 1384087, at \*8. Here, plaintiff's allegations are expressly premised on defendant's alleged failure to acknowledge the effect of the discharge in bankruptcy. Moreover, the conduct of which plaintiff complains, "would not be wrongful absent the existence of the automatic stay [or discharge injunction] imposed by the Bankruptcy Code." *In re Waters*, No. AP 19-80090-JW, 2020 WL 1884191, at \*3 (Bankr. D.S.C. Feb. 13, 2020). Having considered the relevant case law, the Court is persuaded that this plaintiff's N.C. Debt Collections Act claim is preempted by the Bankruptcy Code to the extent it is premised on a violation of the automatic stay or discharge injunction.

Plaintiff's N.C. Debt Collections Act claim is also preempted by the Fair Credit Reporting Act (FCRA) to the extent it is based on credit reporting activities. The FCRA expressly provides that "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . ." 15 U.S.C § 1681t(b)(1)(F). Defendant's obligations with respect to credit reporting, which are the basis of plaintiff's claims relating to defendant's alleged "continued false representations" to consumer reporting agencies, are defined by Section 1681s-2 of the

FCRA. In his response to defendant's motion plaintiff does not address defendant's arguments regarding FCRA preemption and points the Court to no statutory provision or case law which would suggest his N.C. Debt Collection Act claim based upon defendant's credit reporting is not preempted. Accordingly, the Court concludes that plaintiff's N.C. Debt Collections Act claim premised on defendant's credit reporting activity is preempted by the FCRA. *See, e.g., Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010); *Madden v. Experian Info. Sols., Inc.*, No. 5:12-CV-00162, 2014 U.S. Dist. LEXIS 133597, at *13 (W.D.N.C. Sep. 23, 2014).

To the extent it is not otherwise preempted, plaintiff's N.C. Debt Collection Act claim is premised on two alleged violations: failing to disclose in all communications from PHH that the communications were from a debt collector for the purpose of collecting a debt and communicating with plaintiff after defendant had been notified that counsel represented plaintiff. [DE 1-1 ¶ 211 E, F].

To succeed on a N.C. Debt Collections Act claim, plaintiff must first satisfy the threshold showing required – that the obligation owed was a debt, that the person owing the obligation is a consumer, and that the obligation is attempting to be collected by a debt collector. *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 682 (E.D.N.C. 2019). If he can do so, he must then show that the actions of defendant were unfair or deceptive. "In the context of debt collection, these acts include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means." *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 296 (2000).

Importantly, the surrender of property in bankruptcy "does not serve to pass ownership of the Residence to a lender; nor does it require the lender to foreclose its mortgage." *In re Rose*, 512 B.R. 790, 793 (Bankr. W.D.N.C. 2014) (citing 11 U.S.C. § 1325(a)(5)(C)). In other words, despite plaintiff's surrender of the property in bankruptcy, his name remained on the Deed of

13

Trust, and it is undisputed that his now-former wife remained on the Loan. As plaintiff was still an owner of the Property, it was not unconscionable or improper for defendant to contact plaintiff, especially as all written communications contained a disclaimer that, if the debt had been discharged in bankruptcy, the contact was for informational purposes only. As discussed below, in a case applying the federal Fair Debt Collection Practices Act, which North Carolina courts look to when analyzing their own N.C. Debt Collection Act, the Fourth Circuit has held that the language included in the correspondence to plaintiff which disclaimed any attempt to collect on a debt discharged in bankruptcy amounted to the correspondence *not* being considered an attempt to collect a debt. *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308, 311 (4th Cir. 2016).

It is undisputed that plaintiff remained on the Deed of Trust and that he made no attempt to remove himself from the Title to the Property. It is further undisputed that the Deed of Trust required the Guthries to maintain hazard insurance, pay taxes on the property, and pay for maintenance and preservation of the Property. Accordingly, as to the two remaining ways that plaintiff contends defendant violated the N.C. Debt Collections Act, the Court holds that he has failed to create a genuine issue of material fact as to whether defendant violated the Act on these grounds.

(3) North Carolina Collection Agency Act.

In the alternative to his N.C. Debt Collection Act claim, plaintiff alleges that defendant violated the North Carolina Collection Agency Act. The N.C. Collection Agency Act applies to collection agencies, which it defines as "a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims." N.C. Gen. Stat. § 58-70-15. The statute provides that a

14

collection agency does not include, among other things, banks or bank owned, controlled or related firms or "Corporations or associations engaged in accounting, bookkeeping, or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping services for creditors." *Id.* § 58-70-15(c)(2);(2a). Loan servicers, such as defendant, have been held to fall under the exemption to the definition of a collection agency. *See, e.g., Williams v. HomEq Servicing Corp.*, 184 N.C. App. 413, 424 (2007); *Hacker v. Wells Fargo Bank, N.A.*, No. 4:15-CV-163-BR, 2016 U.S. Dist. LEXIS 135503, at *17 (E.D.N.C. Sep. 30, 2016). Although plaintiff argues that he has demonstrated by his affidavit that defendant is a collection agency, plaintiff's subjective contentions do not demonstrate that defendant meets the statutory definition of a collection agency. Defendant is entitled to summary judgment in its favor on this claim.

(4) Remaining state law claims.

Plaintiff has also alleged claims for intentional and negligent infliction of emotional distress and negligence under North Carolina law. As with several of his North Carolina statutory-based claims, these claims are preempted by the Bankruptcy Code and the FCRA.

The Bankruptcy Code preempts plaintiff's emotional distress and negligence claims to the extent they are premised on alleged attempts to collect on a discharged debt. *See In re Johnston*, 362 B.R. at 739; *In re Gaitor*, 2015 Bankr. LEXIS 2545, at *15. The FCRA preempts these claims insofar as they are based on defendant's credit reporting conduct. *See* 15 U.S.C. § 1681t(b)(1)(F). Accordingly, these claims are preempted in their entirety.

Plaintiff has also failed to create a genuine issue of material fact on his negligence claim. A claim for negligence under North Carolina law requires a plaintiff to demonstrate that "(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted

15

from the injury." *Parker v. Town of Erwin*, 243 N.C. App. 84, 110 (2015) (quoting *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830 (2002)). Plaintiff has failed to allege or create a genuine issue of fact as to any duty owed to plaintiff by defendant. Additionally, to the extent plaintiff attempts to show that defendant negligently violated a statute, such a claim is recognized under North Carolina law only "for violations of public safety statutes." *Self*, 2019 U.S. Dist. LEXIS 165305, at *20-21.

Defendant is therefore entitled to summary judgment in its favor on these claims as well.

*Claims arising under federal law*

(1) Fair Credit Reporting Act (FCRA).

In his complaint, plaintiff identifies three instances where he notified a consumer reporting agency (CRA) of inaccurate and false information on a consumer report concerning the Loan: a dispute to Trans Union in late 2018 or early 2019, a dispute to Experian in April 2019, and a dispute to Equifax in April or May 2019. Compl. ¶¶ 107, 111, 114-15. Plaintiff brings a claim for negligent violation of the FCRA alleging defendant failed to adequately investigate the disputes under 15 U.S.C. § 1681s-2(b). Plaintiff also alleges that PHH willfully failed to comply with the FCRA, entitling him to appropriate statutory and punitive damages. *Id.* § 1681n.

(i) Negligent violation of the FCRA. The FCRA requires furnishers of credit information, such as defendant, to take certain actions after receiving notice of a dispute: conduct an investigation, review the relevant information provided by the CRA, report the results of the investigation to the CRA, and if the investigation finds incomplete or inaccurate information, report those results to all other CRAs to which the information was provided. 15 U.S.C. § 1681s-2(b) (A)-(D). To succeed on a claim for negligent violation of the FCRA, a plaintiff must show that (1) he notified the CRA of the disputed information; (2) that the CRAs notified the defendant of the dispute, and (3) that after receiving notice the defendant failed to investigate the

16

dispute and modify any inaccurate information. *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015).

As to the 2019 Equifax dispute, the record does not support that defendant received notice of that dispute from Equifax, which is a prerequisite to trigger investigation obligations under the FCRA. Feezer Decl. ¶ 64. In opposition, plaintiff argues only that he initiated a dispute with Equifax and that he was informed by Equifax that the information concerning the Loan was accurate. Guthrie Aff. ¶¶ 59-60. But that is insufficient to show or create a genuine issue of material fact as to whether defendant received notice of plaintiff's dispute to Equifax. Accordingly, defendant is entitled to summary judgment as to plaintiff's FCRA claim based upon his 2019 dispute to Equifax. Moreover, to the extent plaintiff's opposition to the motion for summary judgment attempts to identify additional disputes to CRAs on which his FCRA claim is based, such an attempt fails at this stage of the proceeding and absent any request to amend his complaint.

Thus, the Court considers whether summary judgment is appropriate on plaintiff's FCRA claim arising from plaintiff's dispute to Trans Union in late 2018 or early 2019 and dispute to Experian in April 2019. While it is true that whether a particular investigation by a furnisher of credit information was reasonable is typically a question for a jury, summary judgment is appropriate if the plaintiff cannot demonstrate that he has suffered actual damages as a result of the actions of the defendant. *Davenport*, 124 F. Supp. 3d at 581; *see also Primrose v. Castle Branch*, No. 7:14-CV-235-D, 2017 U.S. Dist. LEXIS 51, at *15 (E.D.N.C. Jan. 3, 2017). That is the case here.

Certainly, plaintiff cannot rely on any alleged damages which arose prior to defendant's alleged failure to reasonably investigate his dispute. *Davenport*, 124 F. Supp. at 582. Plaintiff cannot therefore rely on the mortgage loan denial from Navy Federal Credit Union in January

17

2019. That denial was based on credit information collected by the credit union on January 9, 2019. [DE 84-4]. It is undisputed that defendant did not respond to the Trans Union dispute until January 28, 2019, or to the Experian dispute until May 6, 2019. Accordingly, Navy Federal Credit Union's denial of credit cannot have been based on defendant's investigation. The same is true for PNC Bank's April 2019 denial of a car loan to plaintiff, which was based on information obtained from Experian. [DE 84-5].

Plaintiff was also denied credit for a car loan from Sun Trust Bank in April 2019, which was based in whole or in part on information from Trans Union. [DE 84-6]. The reasons listed by Sun Trust for the denial were serious delinquency, length of time since account not paid as agreed, proportion of loan balances to loan amounts too high, and amount past due on accounts. *Id.*

Defendant contends that while it had responded to Trans Union's report of a dispute by plaintiff prior to this denial of credit, the information provided by defendant cannot have been the information that Sun Trust relied on because in response to plaintiff's dispute defendant informed Trans Union that the Loan account was current, with $0 past due, and had been affected by a natural disaster. In short, the basis for Sun Trust's denial of credit could not have been based on defendant's investigation and response to plaintiff's dispute because the grounds for Sun Trust's denial are different from what was reflected in defendant's response.

Plaintiff has also failed to create a genuine issue of material fact as to whether any other damages were suffered as a result of any alleged FCRA violations by defendant. The summary judgment record does not support that plaintiff has created a genuine issue of fact as to any emotional damages he contends to have suffered. Plaintiff relies only on his own affidavit to establish the existence of his emotional damages and does not dispute that no medical provider has opined that his GERD is a result of or was exacerbated by the alleged acts or omissions of

18

defendant or that he has never been diagnosed with a physical or mental condition which was experienced as a result of the alleged acts or omissions of defendant, including anxiety. While plaintiff's own testimony can support damages for emotional distress, plaintiff's conclusory and vague statements regarding his emotional state are insufficient at this stage of the proceeding. *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007). Plaintiff offers no corroborating evidence, either in the form or professional or lay statements, nor does his affidavit provide "sufficiently articulated descriptions" of his distress or the nexus between defendant's alleged violations of the FCRA and his distress. *Id.*

The same is true for plaintiff's alleged professional damages. Importantly, to create a sufficient nexus between any alleged violation of the FCRA and plaintiff's security clearance status, plaintiff must be able to show that the information the Department of Defense inquired about related to the two credit disputes at issue in this claim. The record demonstrates that plaintiff cannot make that connection. Moreover, the record reflects that plaintiff did not lose his security clearance, he received no demotion or discipline, and his pay was not docked.

Accordingly, summary judgment is appropriate in defendant's favor on plaintiff's claim for negligent violation of the FCRA.

(ii) Willful violation of the FCRA. Plaintiff further alleges that defendant willfully failed to comply with the FCRA based upon all of the violations outlined in the complaint. Compl. ¶ 258. To succeed on such a claim, a plaintiff must show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (internal quotation and citation omitted).

In its motion for summary judgment, defendant contends that there is no evidence which would demonstrate that defendant acted knowingly or in reckless disregard of the FCRA's

19

requirements and that the undisputed evidence shows that defendant maintained relevant policies and procedures to ensure compliance with the FCRA and that it followed those policies and procedures in this case. Feezer Decl. ¶¶ 62-63.

Recognizing that summary judgment is typically not appropriate on whether a party acted with a particular state of mind, *Dalton*, 257 F.3d at 418, there is nothing in this record that would support a reasonable juror in concluding that defendant knowingly and intentionally acted in conscious disregard of plaintiff's rights. To that end, plaintiff's response to defendant's motion for summary judgment on this issue consists only of his argument that the issue should go to a jury. This is insufficient to rebut defendant's request for summary judgment. Defendant is entitled to summary judgment on this claim.

(2) Telephone Consumer Protection Act (TCPA).

Plaintiff alleges that defendant violated that TCPA, 47 U.S.C. § 227, by making calls to plaintiff over a period of years using an automated telephone dialing system as that term is defined by the Act. 47 U.S.C. § 227(a); Compl. ¶¶ 262-267. "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

The record reflects that defendant did not use a random or sequential number generator to store or produce plaintiff's cell phone number before contacting him. In opposition to the instant motion, plaintiff states that defendant told him during phone calls that they were using an auto-dialer when calling him. Plaintiff has not proffered evidence which would tend to show that an "auto dialer" is a device with the capacity to store or produce a telephone number using a random sequential number generator. Rather, the only evidence in the record is that plaintiff was contacted specifically because of his relationship with defendant, not as a result of random

20

contact. *See* Feezer Decl. ¶¶ 70-71. Defendant is entitled to summary judgment in its favor on this claim.

(3) Real Estate Settlement Procedures Act (RESPA).

Plaintiff alleges that defendant violated RESPA by failing to respond to a Qualified Written Request (QWR) sent to defendant on December 16, 2019, and received by defendant on December 20, 2019.

> RESPA requires the servicer of a federally related mortgage loan to acknowledge receipt of a QWR within five business days of receipt. Thereafter, within thirty business days, the servicer must: (1) make corrections to the borrower's account; (2) after conducting an investigation, provide a written explanation stating the reasons the servicer believes the account is correct; or (3) conduct an investigation and provide the information requested by the borrower or an explanation of why the information is unavailable. In the event a servicer fails to comply with this requirement, RESPA authorizes a plaintiff to recover actual damages "as a result of" the servicer's failure.

*Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (internal citations omitted); *see also* 12 U.S.C. § 2605(e). A QWR is defined as written correspondence that enables the loan servicer to identify the borrower and includes a statement of the reasons the borrower believes the account is in error or contains sufficient detail regarding other information the borrower seeks. 12 U.S.C. § 2605(e)(1)(B). To qualify as a QWR, the correspondence must relate to servicing; "correspondence regarding the validity of a loan does not relate to servicing." *Barr* 303 F. Supp. 3d at 418.

Despite the fact that the correspondence is identified as a QWR, Compl. Ex. 16, the letter is, at bottom, a challenge to the validity of the Loan and not correspondence relating to the servicing of the Loan. *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012). Indeed, the letter states that plaintiff is asserting that defendant has erred in "[a]ssessing, collecting, or attempting to collect fees, expenses, costs, attorneys' fees, or other charges from [plaintiff] which are neither authorized under applicable law or pursuant to the

21

terms of the Deed of Trust, the Note, and *the Discharge* [in bankruptcy] . . .." Compl. Ex. 16 (emphasis added).

Moreover, plaintiff has failed to create a genuine issue of material fact as to whether he has suffered damages as a result of any alleged RESPA violation. He must show that he suffered actual damages to prevail on his RESPA claim, *see Self*, 2019 U.S. Dist. LEXIS 165305, at *24, and nothing in the record would tend to show that any failure on defendant's part in responding to the letter, assuming it is properly considered at QWR, resulted in damage to plaintiff. Indeed, plaintiff initiated this lawsuit prior to the expiration of the statutory period within which defendant was required to respond. Plaintiff has further failed to create a genuine issue of material fact as to whether defendant engaged in a pattern or practice of RESPA violations.

(4) Fair Debt Collection Practices Act (FDCPA).

Plaintiff alleges that defendant violated the FDCPA by, *inter alia*, falsely representing the character, amount, and legal status of the Loan in attempts to collect a debt; communicating credit information concerning plaintiff and the Loan to CRAs which defendant knew or should have known was false; by failing to communicate to CRAs that the debt was disputed; by failing to disclose that communications to plaintiff were from a debt collector in an attempt to collect a debt; by placing telephone calls with the intent to annoy, harass, and/or abuse plaintiff; and by failing to communicate with plaintiff's counsel after defendant knew plaintiff was represented by counsel. Compl. ¶¶ 301-316.

The FDCPA was enacted in part to "eliminate abusive debt collection practices by debt collectors" and regulate debt collection practices. 15 U.S.C. § 1692(e). To prevail on a FDCPA claim, a plaintiff must show that "(1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA."

22

*Johnson v. BAC Home Loans Servicing*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). Whether a communication is an attempt to collect a debt "is a commonsense inquiry that evaluates the nature of the parties' relationship, the objective purpose and context of the communication, and whether the communication includes a demand for payment." *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (internal alterations, quotations, and citation omitted).

Plaintiff does not specifically dispute defendant's contention that during the time periods relevant to the complaint, defendant, as either OLS or PHH, was the owner of the Loan, and was therefore a creditor not a debt collector under the FDCPA. 15 U.S.C. §§ 1692a(6); (4). As a creditor, defendant's conduct in relation to the Loan is not regulated by the FDCPA. *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 134, 137 (4th Cir. 2016).

Even if defendant were properly considered to be a debt collector for purposes of the FDCPA, plaintiff has failed to create a genuine issue of material fact as to whether defendant's actions violated the FDCPA. In his brief, plaintiff fails to cite specific evidence in the record which would tend to show that defendant is liable for any specific violations of the FDCPA. Additionally, in a similar case, the Fourth Circuit has held that a letter sent by OLS that included disclaimers regarding bankruptcy similar to those included in the letters to plaintiff were not an attempt to collect a debt for purposes of the FDCPA. *Lovegrove*, 666 F. App'x at 311 ("the communications were for informational purposes only, were non-threatening in nature, and contained clear and unequivocal disclaimers to establish that they were not in connection with the collection of a debt under Lovegrove's circumstances."). "It is not a violation of the FDCPA for a debt collector to seek payment of an alleged debt by making telephone calls and writing letters that do not violate the law." *Mavilla v. Absolute Collection Serv.*, No. 5:10-CV-412-F,

2013 U.S. Dist. LEXIS 3925, at *39 (E.D.N.C. Jan. 10, 2013). The Court determines that defendant is entitled to summary judgment in its favor on this claim.[3]

B.     Plaintiff's motion for partial summary judgment.

Plaintiff seeks summary judgment in his favor as to liability on certain claims, specifically his claim for violation of the N.C. Debt Collection Act, or violation of the UDTPA; or violation of the N.C. Collection Agency Act.

As discussed above, even viewing the facts in the light most favorable to plaintiff when considering defendant's motion for summary judgment, defendant has demonstrated that summary judgment in its favor is appropriate on each of these claims. Plaintiff's motion is therefore appropriately denied.

CONCLUSION

Accordingly, for the foregoing reasons, defendant's motions to seal [DE 87, 76] are GRANTED; defendant's motion for protective order [DE 63] is DENIED AS MOOT; defendant's motion for summary judgment [DE 81] is GRANTED; defendant's motion to strike [DE 117] is DENIED; plaintiff's motion to strike [DE 79] is GRANTED; and plaintiff's motion for summary judgment [DE 99] is DENIED.

After the expiration of the period described below, the Clerk is DIRECTED to UNSEAL the following docket entries: DE 97, 98, 99, 100, 101, 102-106. The Clerk shall further UNSEAL DE 69 with the exception of DE 69-14, which shall remain under seal and for which defendant has filed a redacted version at DE 76-2.

The parties shall have five (5) days from the date of entry of this order to request that any document unsealed by entry of this order should, in fact, remain sealed. Should no party request

---

[3] In light of the foregoing, the Court declines to address defendant's laches argument.

24

that any of the foregoing documents remain under seal, the Clerk shall unseal the foregoing documents without further order of the Court.

As defendant's motion for summary judgment in its favor on all of plaintiff's claims has been granted, the Clerk is DIRECTED to enter judgment accordingly and close the case.

SO ORDERED, this **4** day of March 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE